Keely E. Duke
ISB #6044; ked@dukeevett.com
Emma C. Nowiack
ISB #10742; ecn@dukeevett.com
DUKE EVETT, PLLC
1087 W. River Street, Suite 300
Boise, Idaho 83702
Tel:     (208) 342-3310
Fax:    (208) 338-4777

Dena Economou (*pro hac vice* pending)
deconomou@karballaw.com
Gerald E. Ziebell (*pro hac vice* pending)
gziebell@karballaw.com
KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC
200 S. Wacker Drive, Suite 2550
Chicago, Illinois 60606
Tel:     (312) 431-3700
Fax:    (312) 431-3670

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| TWIN CITY FIRE INSURANCE COMPANY, NUTMEG INSURANCE COMPANY, and HARTFORD UNDERWRITERS INSURANCE COMPANY, formerly known as New York Underwriters Insurance Company, | Case No. 1:22-CV-390 |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| v. | |
| HECLA LIMITED, formerly known as Hecla Mining Company, | |
| Defendant, | |
| and | |
| NEW HAMPSHIRE INSURANCE COMPANY, and OLD REPUBLIC INSURANCE COMPANY, | |
| Interested Party Defendants. | |

COMPLAINT FOR DECLARATORY JUDGMENT - 1

Plaintiffs, TWIN CITY FIRE INSURANCE COMPANY ("Twin City"), NUTMEG INSURANCE COMPANY ("Nutmeg") and HARTFORD UNDERWRITERS INSURANCE COMPANY, f/k/a New York Underwriters Insurance Company ("Hartford Underwriters") (collectively, Twin City, Nutmeg and Hartford Underwriters are referred to herein as "Hartford"), by and through their attorneys, Duke Evett, PLLC, for their Complaint for Declaratory Judgment against Defendant, HECLA LIMITED, f/k/a Hecla Mining Company ("Hecla"), and Interested Party Defendants, NEW HAMPSHIRE INSURANCE COMPANY ("New Hampshire") and OLD REPUBLIC INSURANCE COMPANY ("Old Republic"), hereby state as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, wherein Hartford seeks a declaratory judgment as to parties' respective rights and obligations under certain policies of liability insurance issued by Hartford with respect to Hecla's alleged environmental liabilities arising out of the alleged release or threatened release of hazardous substances or contaminants at or near various mining sites.

2.      An actual and justiciable controversy exists between the parties in that Hartford alleges that it does not owe any duty to defend or indemnify Hecla with respect to any environmental liabilities arising out of alleged contamination caused by historical mining operations at the sites at issue, and upon information and belief, Hecla disputes Hartford's position.

## THE PARTIES

3.      Plaintiff Twin City is an Indiana corporation with its principal place of business located in Hartford, Connecticut.

COMPLAINT FOR DECLARATORY JUDGMENT - 2

4.     Plaintiff Nutmeg is a Connecticut corporation with its principal place of business located in Hartford, Connecticut.

5.     Plaintiff Hartford Underwriters, formerly known as New York Underwriters Insurance Company ("New York"), is a Connecticut corporation with its principal place of business located in Hartford, Connecticut.

6.     Defendant Hecla is a Delaware corporation with its principal place of business located in Coeur d'Alene, Idaho.  Upon information and belief, Hecla was formerly known as Hecla Mining Company.

7.     Interested Party Defendant New Hampshire is a Pennsylvania corporation with its principal place of business located in New York, New York.

8.     Interested Party Defendant Old Republic is a Pennsylvania corporation with its principal place of business located in Chicago, Illinois.

## JURISDICTION AND VENUE

9.     Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332(a)(1), because Plaintiffs, Defendant and Interested Party Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(1), because Defendant Hecla's main office and headquarters is located within this judicial district.  In addition, venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(2), because the claim for coverage arises out of policies of insurance issued and delivered to Hecla in this District, property insured under those policies is within this District, and a substantial part of the events or omissions giving rise to this action occurred in this District.

COMPLAINT FOR DECLARATORY JUDGMENT - 3

11.     The Court has personal jurisdiction over Defendant Hecla because, at all relevant times, it is a corporation residing in and doing business in the State of Idaho.

## THE POLICIES

**A.     Twin City Umbrella Policies**

12.     Twin City issued the following umbrella insurance policies to Hecla Mining Company (the "Twin City Umbrella Policies"):

| Policy No. | Policy Period |
|------------|---------------|
| TXU 100467 | 1/1/1982 – 1/1/1983 |
| TXU 106159 | 1/1/1983 – 12/31/1983 |
| 98 TXU 110488 | 12/31/1983 – 1/1/1985 |

Copies of the Twin City Umbrella Policies are attached hereto as Exhibits A – C.

13.     Twin City Umbrella Policy Nos. TXU 100467 and TXU 106159 each contain the following insuring agreement, in relevant part:

### I  Coverage

The Company will indemnify the **insured** for **ultimate net loss** in excess of the **underlying limit** or the **self-insured retention**, whichever is the greater, because of:

    (a) **bodily injury**,
    (b) **personal injury**,
    (c) **property damage** or
    (d) **advertising injury**

to which this insurance applies, caused by an **occurrence** which takes place anywhere in the world.

### II  Investigation, Defense, Settlement

The Company will defend any claim or suit against the **insured** seeking **damages** on account of injury or damage to which this policy applies and which no underlying insurer is obligated to defend, but may make such investigation, defense and settlement thereof as it deems expedient; provided, however, the Company shall have the right but not the duty to investigate, settle or defend any such claim or suit brought against the **insured** outside the United States of America, its territories or possessions or Canada.

COMPLAINT FOR DECLARATORY JUDGMENT - 4

If the Company elects not to investigate, settle or defend any such claim or suit, the **insured** under the supervision of the Company shall arrange for such investigation and defense thereof as are reasonably necessary, and subject to prior authorization of the Company, shall effect such settlement there as the Company and the **insured** deem expedient.

All expenses incurred by the Company or the **insured** in the investigation, settlement and defense of claims or suits shall be charged against the limit of the Company's liability with respect to **ultimate net loss**. The Company shall not be obligated to pay any claim or judgment, defend any claim or suit or reimburse the **insured** for the costs of investigation, settlement or defense any claim or suit after the applicable limit of the Company's liability for **ultimate net loss** has been exhausted.

\* \* \*

14.     Twin City Umbrella Policy No. 98 TXU 110488 contains the following insuring

agreement, in relevant part:

### I.  COVERAGE

The company will pay on behalf of the **insured**\* **ultimate net loss** in excess of the total applicable limit (as stated in Extension Schedule of **Underlying Insurance** Policies) of **underlying insurance** or the amount of the **self-insured retention** when no **underlying insurance** applies because of **bodily injury**, **personal injury**, **property damage** or **advertising injury** to which this insurance applies, caused by an **occurrence**.

\* \* \*

### II.  INVESTIGATION, DEFENSE, SETTLEMENT

With respect to **bodily injury**, **personal injury**, **property damage**, or **advertising injury** covered under this policy (whether or not the **self-insured retention** applies) and

(1) for which no coverage is provided under any **underlying insurance**; or
(2) for which the underlying limits of any **underlying insurance** have been exhausted solely by payments of **damages** because of **occurrences** during the period of this policy,

The company will

(a)   defend any **suit** against the **insured** seeking **damages** on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient;

\* \* \*

15.    The Persons Insured provision in each of the Twin City Umbrella Policies

provides, in relevant part:

### III  Persons Insured

Each of the following is an **insured** under this insurance to the extent set forth
below:

\* \* \*

(c)    if the **named insured** is designated in the declarations as other than an
individual, partnership or joint venture, the organization so designated
and any executive officer, director or stockholder thereof while acting
within the scope of his duties as such;

\* \* \*

This insurance does not apply to **bodily injury**, **personal injury**, **property
damage** or **advertising injury** arising out of the conduct of any partnership or
joint venture of which the **insured** is a partner or member and which is not
designated in this policy as a **named insured**.

\* \* \*

16.    The Named Insured Endorsement (End. No. 1) in the Twin City Umbrella Policies

provides as follows:

### NAMED INSURED ENDORSEMENT

It is understood and agreed that the named insured is completed to read as
follows:

1. Hecla Mining Company
2. Accoli, Inc.
3. Lucky Friday Silver-Lead Mines Company
4. Hecla Operating Company
5. Hecla Mining Company of Canada, Ltd.
6. Chester Mining Company
7. Nine Corporation
8. Consolidated Silver Corporation
9. Wall Street Mining Company
10. Helca-Day Mining Corporation

It is further understood and agreed that the following is included as an additional
insured hereunder but only as respects the operation contract of Star-Unit Area:

COMPLAINT FOR DECLARATORY JUDGMENT - 6

The Bunker Hill Company

\* \* \*

17.     The Mining Limitation Endorsement (End. No. 6) in the Twin City Umbrella

Policies provides as follows:

<u>MINING LIMITATION ENDORSEMENT</u>

It is agreed that such insurance as is afforded by the policy as respects the operation of <u>various mines, as per application on file</u>, shall not apply:

1.  To injury to or destruction of underground property, or to the increased cost of reducing any underground property to physical possession above the surface of the earth, or to the expense incurred or rendered necessary to prevent or minimize loss of or damage to such property resulting from acts or omissions causing underground damage.

    The term "underground property", as used herein, means oil, gas, water or other mineral substances, including any title, interest or estate therein, which, at the time of the act or omission causing loss of, injury to or destruction of such substance, or loss, impairment, or reduction of the value of such title, interest or estate, has not been reduced to physical possession above the surface of the earth. Such term also includes all well, hole, formation, strata or area in or through which exploration for or production of any such substance is carried on, and any casing, pipe, bit, tool, pump or other drilling or servicing machinery or equipment which is located in any such well or hole beneath the surface of the earth at the time of the occurrence causing such loss, injury or destruction.

2.  To property damage directly or indirectly arising out of, caused by, resulting from, contributed to or aggravated by the subsidence, sinking, settling, slipping, falling away, caving in, shifting, rising, eroding, mud flow, tilting, or any other movement of land or earth, if any of the foregoing emanates from a <u>see above</u> mine, whether active, inactive or abandoned, or operations being conducted therein. …

\* \* \*

18.     Twin City Umbrella Policy Nos. TXU 100467 and TXU 106159 each contain the

following pollution exclusion, which provides as follows:

This insurance does not apply:

\* \* \*

b. To **bodily injury** or **property damage** included within … the **pollution hazard** …

\* \* \*

## V  Definitions

When used in this policy (including endorsement forming a part hereof):

\* \* \*

**"pollution hazard"** includes **bodily injury** and **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this hazard does not include such injury or damage if such discharge, dispersal, release or escape is sudden and accidental;

\* \* \*

19.     Twin City Umbrella Policy No. 98 TXU 110488 contains the following pollution

exclusion which provides:

**EXCLUSIONS**
This insurance does not apply:

\* \* \*

D. to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere, or any watercourse or body of water; but this exclusion does not apply to (1) injury or damage if such discharge, dispersal, release or escape is sudden and accidental, or (2) **bodily injury** to any employees of any **insured** arising out of and in the course of their employment by any **insured**;

\* \* \*

## B.     Twin City Excess Policies

20.     Twin City issued the following excess insurance policies to Hecla Mining

Company (the "Twin City Excess Policies"):

| Policy No. | Policy Period |
|---|---|
| TXS 100635 | 1/1/1983 – 12/31/1983 |
| TXS 100683 | 12/31/1983 – 1/1/1985 |

COMPLAINT FOR DECLARATORY JUDGMENT - 8

Copies of the Twin City Excess Policies are attached hereto as Exhibits D – E.

21.     Except as otherwise provided, each of the Twin City Excess Policies follows form to all the terms, conditions, definitions and exclusions of the controlling underlying insurance policy designated in item 6 of the declarations page of each of the Twin City Excess Policies.

22.     Twin City Umbrella Policy No. TXU 106159 is designated as the controlling underlying insurance policy for Twin City Excess Policy No. TXS 100635.

23.     Twin City Umbrella Policy No. 98 TXU 110488 is designated as the controlling underlying insurance policy for Twin City Excess Policy No. TXS 100683.

24.     Each of the Twin City Excess Policies follows form to the Persons Insured provision, the pollution exclusion and the Mining Limitation Endorsement found in the respective underlying Twin City Umbrella Policies, and which are referenced in Paragraphs 15-17 and Paragraph 18 or 19, above.

**C.     Nutmeg Policies**

25.     Nutmeg issued the following excess insurance policies to Hecla Mining Company (the "Nutmeg Policies"):

| Policy No. | Policy Period |
| --- | --- |
| BXS 100214 | 1/1/1982 – 1/1/1983 |
| BXS 100235 | 1/1/1983 – 12/31/1983 |

Copies of the Nutmeg Policies are attached hereto as Exhibits F – G.

26.     Except as otherwise provided, each of the Nutmeg Policies follows form to all the terms, conditions, definitions and exclusions of the controlling underlying insurance policy designated in item 6 of the declarations page of each of the Nutmeg Policies.

27.     Twin City Umbrella Policy No. TXU 100467 is designated as the controlling underlying insurance policy for Nutmeg Policy No. BXS 100214.

COMPLAINT FOR DECLARATORY JUDGMENT - 9

28.     Twin City Umbrella Policy No. TXU 106159 is designated as the controlling underlying insurance policy for Nutmeg Policy No. BXS 100235.

29.     Each of the Nutmeg Policies follows form to the Persons Insured provision, the pollution exclusion and the Mining Limitation Endorsement found in the respective underlying Twin City Umbrella Policies, and which are referenced in Paragraphs 15-18, above.

**D.     New York Policies**

30.     New York issued the following excess insurance policies to Hecla Mining Company (the "New York Policies"):

| Policy No. | Policy Period |
|---|---|
| 97 EXS 100024 | 1/1/1983 – 1/1/1984 |
| 97 EXS 100051 | 1/1/1984 – 1/1/1985 |

Copies of the New York Policies are attached hereto as Exhibits H – I.

31.     Except as otherwise provided, each of the New York Policies follows form to all the terms, conditions, definitions and exclusions of the controlling underlying insurance policy designated in item 6 of the declarations page of each of the New York Policies.

32.     Twin City Umbrella Policy No. TXU 106159 and Twin City Excess Policy No. TXS 100635 are the controlling underlying insurance policies designated in item 6 of the declarations page of New York Policy No. 97 EXS 10024.

33.     Twin City Umbrella Policy No. 98 TXU 110488 and Twin City Excess Policy No. TXS 100683 are the controlling underlying insurance policies designated in item 6 of the declarations page of New York Policy No. 97 EXS 10051.

34.     Each of the New York Policies follows form to the Persons Insured provision, the pollution exclusion and the Mining Limitation Endorsement found in the respective underlying

COMPLAINT FOR DECLARATORY JUDGMENT - 10

Twin City Umbrella Policies, and which are referenced in Paragraphs 15-17 and Paragraph 18 or 19, above.

**E.      New Hampshire Primary Policies**

35.     Upon information and belief, New Hampshire issued the following primary insurance policies to Hecla Mining Company (the "New Hampshire Primary Policies"):

| Policy No. | Policy Period |
| --- | --- |
| GLA 70-16-75 | 2/15/1980 – 1/1/1981 |
| GLA 298-42-02 | 1/1/1981 – 1/1/1982 |
| GLA 298-42-09 | 1/1/1982 – 1/1/1983 |
| GLA 811-44-57 | 1/1/1983 – 1/1/1984 |
| GLA 29-47-12 | 1/1/1984 – 1/1/1985 |

**F.      Old Republic Policies**

36.     Upon information and belief, Old Republic issued the following excess insurance policies to Hecla Mining Company (the "Old Republic Policies"):

| Policy No. | Policy Period |
| --- | --- |
| ORZU1122 | 1/1/1981 – 1/1/1982 |
| OZX11268 | 1/1/1982 – 1/1/1983 |

**HECLA/AMAX JOINT VENTURE**

37.     On or about June 7, 1983, Hecla and AMAX Exploration, Inc. ("AMAX") entered into a Joint Venture Agreement (the "Joint Venture Agreement").  (A true and correct copy of the Joint Venture Agreement is attached hereto as Exhibit J).

38.     Pursuant to the terms of the Joint Venture Agreement, Hecla and AMAX formed the joint venture (the "Joint Venture") for purposes of the exploration of, and if warranted, the development and mining of, base and precious metals in certain mines situated in the Barker Hughesville Mining District, Judith Basin and Cascade Counties, Montana (the "Barker Hughesville Mining District").

39.     The Joint Venture was formed under the laws of the State of Montana, with its principal place of business located at Hecla headquarters at 7th and Cedar Streets (Box 320), Wallace, Idaho.

40.     Upon information and belief, in accordance with the Joint Venture Agreement, Hecla conducted exploration-related activities at the Grey Eagle/Queen Adit located in the Barker Hughesville Mining District between September 1983 and November 13, 1983.

41.     On or about December 8, 1983, Hecla provided AMAX notice that it was withdrawing from the Joint Venture.

42.     Pursuant to the express terms of the Joint Venture Agreement, upon termination of the Joint Venture, Hecla and AMAX both remained liable for the continuing obligations of the Joint Venture, and for any liability, whether it accrued before or after the termination, if it arose out of the activities of the Joint Venture during the term of the Joint Venture Agreement.

**THE UNDERLYING ENVIRONMENTAL MATTERS**

43.     Hecla has sought coverage under one or more of the Twin City Umbrella Policies, the Twin City Excess Policies, the Nutmeg Policies and/or the New York Policies (collectively the "Hartford Policies") with respect to two underlying environmental matters: (i) the EPA Claim; and (ii) the Asarco Settlement.   The EPA Claim and the Asarco Settlement are collectively referred to herein as the "Underlying Environmental Matters" and are described more fully below.

A.     **The EPA Claim**

44.     The United States Environmental Protection Agency (the "EPA") has designated the Barker Hughesville Mining District as a Superfund site (the "Barker Hughesville Site") pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of

1980 ("CERCLA") in order address environmental contamination resulting from historical mining operations at the Site.

45.     Upon information and belief, the EPA has designated Hecla as a potentially responsible party with respect to environmental contamination at the Barker Hughesville Site (the "EPA Claim").

46.     The EPA Claim arises out of operations conducted at the Barker Hughesville Site by Hecla and AMAX pursuant to their Joint Venture Agreement.

47.     Hecla has asserted that the limits of liability of the New Hampshire Primary Policies are exhausted, and therefore, Hartford is obligated to defend and indemnify Hecla with respect to the EPA Claim under some or all of Hartford Policies.

**B.     The Asarco Settlement**

48.     In 2011 and 2012, Asarco LLC ("Asarco") sued Hecla, naming it as a defendant in the following three actions: (1) *Asarco LLC v. AMAX Exploration Inc., et.al,* Case No. CV-11-23-GF-SHE, United States District Court for the District of Montana (the "Barker Hughesville Lawsuit"); (2) *Asarco LLC v. Hecla Mining Co.,* Case No. 12-381, United States District Court for the Eastern District of Washington (the "Van Stone Lawsuit"); and (3) *Asarco LLC v. Hecla Mining Co.,* Case No. 12-CV-0052-DLC, United States District Court for the District of Montana (the "Black Pine Lawsuit").  The Barker Hughesville Lawsuit, the Van Stone Lawsuit and the Black Pine Lawsuit are collectively referred to herein as the "Asarco Lawsuits."

49.     In each of the Asarco Lawsuits, Asarco sought contribution from Hecla under CERCLA for environmental contamination allegedly arising out of, in part, Hecla's ownership, use and/or operations at three separate mines.

50.     As to the Barker Hughesville Lawsuit, Asarco's Amended Complaint (the "Amended Complaint") alleged that Asarco incurred approximately $9 million in response costs for environmental contamination at a portion of the Barker Hughesville Site known as the Block P Mine and Mill (the "Block P Site").

51.     The Amended Complaint further alleged that Hecla conducted operations in the Barker Hughesville Mining District that resulted in releases of contaminants into the environment within the meaning of CERCLA and, therefore, Hecla was responsible for an equitable share of the response costs Asarco incurred at the Block P Site.

52.     Paragraph 17 of the Amended Complaint further alleged, "Defendant Hecla and AMAX formed a joint venture in 1983 and conducted exploratory mining activities."

53.     In its Answer to Paragraph 17 of the Amended Complaint, Hecla stated, "Hecla admits that it and AMAX Exploration formed a joint venture in 1983 and that certain activities were conducted pursuant to that joint venture agreement…."

54.     Upon information and belief, the "joint venture agreement" referenced in Hecla's Answer to Paragraph 17 of the Amended Complaint is the Joint Venture Agreement, as that term is defined in Paragraph 37 above.

55.     Hecla has advised Twin City that Hecla and Asarco entered into a settlement agreement in 2012, wherein Hecla settled all three of the Asarco Lawsuits (the "Asarco Settlement").

56.     Hecla has asserted that New Hampshire reached a settlement with Hecla whereby New Hampshire reimbursed Hecla for a portion of the Asarco Settlement and that those payments allegedly exhausted the applicable limits of liability of the New Hampshire Primary

Policies, and Hecla thus contends that Twin City is obligated to indemnify Hecla for that portion of the Asarco Settlement that was not funded by the New Hampshire Primary Policies.

<u>**COUNT I – DECLARATORY JUDGMENT**</u>
<u>**The Hartford Policies Do Not Provide Coverage for the Joint Venture**</u>

57.    Hartford hereby realleges and incorporates Paragraphs 1–56 of this Complaint as if fully set forth herein.

58.    The Persons Insured provision of the Twin City Umbrella Policies sets forth the persons or entities that qualify as a named insured or insureds thereunder.

59.    In relevant part, the Persons Insured provision states that the Twin City Umbrella Policies do not apply to bodily injury, personal injury or property damage "arising out the conduct of any joint venture of which the insured is a partner or member and which is not designated in this policy as a named insured."

60.    The remaining Hartford Policies follow form to the Persons Insured provision contained in the Twin City Umbrella Policies.

61.    Hecla's liabilities with respect to the EPA Claim and the Barker Hughesville Lawsuit arise out of operations conducted by their Joint Venture under the Joint Venture Agreement between Hecla and AMAX.

62.    The Joint Venture between Hecla and AMAX is not designated as a named insured under any of the Hartford Policies.

63.    Hecla is not insured as respects its participation in the Joint Venture and the Joint Venture between Hecla and AMAX is not insured under any of the Hartford Policies.

64.    Hartford has no obligation to defend, indemnify or otherwise provide coverage to Hecla with respect Hecla's liabilities for the EPA Claim or the Barker Hughesville Lawsuit.

65.    An actual controversy exists between Hartford and Hecla concerning whether Hecla is entitled to coverage, defense, and/or indemnity under the Hartford Policies with respect to the EPA Claim and the Barker Hughesville Lawsuit.

**WHEREFORE**, Plaintiffs, Twin City Fire Insurance Company, Nutmeg Insurance Company and Hartford Underwriters Insurance Company, pray for judgment in Hartford's favor and a declaration as follows:

(a)    Declaring that Hecla's liabilities with respect to the EPA Claim and the Barker Hughesville Lawsuit arise out of operations conducted by their Joint Venture pursuant to the Joint Venture Agreement;

(b)    Declaring that Hecla is not an insured under the Hartford Policies as respects its participation in the Joint Venture;

(c)    Declaring that the Joint Venture does not qualify as a named insured under any of the Hartford Policies;

(d)    Declaring that Hartford has no obligation to defend or indemnify or otherwise provide coverage to Hecla with respect to the EPA Claim;

(e)    Declaring that Hartford has no obligation to indemnify or otherwise provide coverage to Hecla for any portion of the Asarco Settlement attributable or allocable to Hecla's liabilities in the Barker Hughesville Lawsuit; and

(f)    Awarding Hartford such other and further relief as the Court may deem appropriate and just.

## <u>COUNT II – DECLARATORY JUDGMENT</u>
### <u>Coverage for the Underlying Environmental Matters is Barred by the Pollution Exclusions</u>

66.     Hartford hereby realleges and incorporates Paragraphs 1–56 of this Complaint as if fully set forth herein.

67.     The applicable pollution exclusions contained in each of the Hartford Policies preclude coverage for property damage arising out the discharge, dispersal, release or escape of contaminants or pollutants, unless such discharge, dispersal, release or escape was sudden and accidental.

68.     Hecla's liability with respect to the Underlying Environmental Matters arises out of the discharge, dispersal, release or escape of contaminants or pollutants, and Hecla has not shown that the alleged property damage for which it seeks coverage arose out of any sudden or accidental event.

69.     The pollution exclusions contained in each of the Hartford Policies apply to preclude coverage and, therefore, Hartford has no obligation to defend, indemnify or otherwise provide coverage to Hecla with respect Hecla's liabilities for the Underlying Environmental Matters.

70.     An actual controversy exists between Hartford and Hecla concerning whether Hecla is entitled to coverage, defense, and/or indemnity under the Hartford Policies with respect to the Underlying Environmental Matters.

**WHEREFORE**, Plaintiffs, Twin City Fire Insurance Company, Nutmeg Insurance Company and Hartford Underwriters Insurance Company, pray for judgment in Hartford's favor and a declaration as follows:

(a)     Declaring that coverage for the Underlying Environmental Matters is barred by the applicable pollution exclusions contained in each of the Hartford Policies;

(b)     Declaring that Hartford has no duty to defend or otherwise provide coverage to Hecla with respect to the Underlying Environmental Matters; and

(c)     Awarding Hartford such other and further relief as the Court may deem appropriate and just.

## COUNT III – DECLARATORY JUDGMENT
### Coverage is Barred by the Mining Limitation Exclusion

71.     Hartford hereby realleges and incorporates Paragraphs 1–56 of this Complaint as if fully set forth herein.

72.     As respects the operations of various mines, the Mining Limitation Endorsement in each of the Hartford Policies precludes coverage for "injury to or destruction of underground property … resulting from acts or omission causing underground damage."

73.     As respects the operations of various mines, the Mining Limitation Endorsement in each of the Hartford Policies also precludes coverage "to property damage directly or indirectly arising out of, caused by, resulting from, contributed to or aggravated by … movements of land or earth…"

74.    To the extent that any of the mines and damages at issue in the Underlying Environmental Matters fall within the scope of the Mining Limitation Endorsement in each of the Hartford Policies, Hartford has no obligation to defend or indemnify Hecla.

75.    An actual controversy exists between Hartford and Hecla concerning whether Hecla is entitled to coverage, defense, and/or indemnity under the Hartford Policies with respect to the Underlying Environmental Matters.

**WHEREFORE**, Plaintiffs, Twin City Fire Insurance Company, Nutmeg Insurance Company and Hartford Underwriters Insurance Company, pray for judgment in Hartford's favor and a declaration as follows:

(a)    Declaring whether the Mining Limitation Endorsement applies with respect to any of the Underlying Environmental Matters;

(b)    Declaring the parties' rights and obligations under the Hartford Policies with respect to the Underlying Environmental Matters; and

(c)    Awarding Hartford such other and further relief as the Court may deem just and appropriate.

## COUNT IV – DECLARATORY JUDGMENT
### Exhaustion of Applicable Underlying Primary Coverage

76.    Hartford hereby realleges and incorporates Paragraphs 1–56 of this Complaint as if fully set forth herein.

77.    Coverage under the Hartford Policies does not attach unless and until the limits of liability of all applicable underlying insurance policies are exhausted, including, but not limited to, the New Hampshire Primary Policies.

COMPLAINT FOR DECLARATORY JUDGMENT - 19

78.    Hecla and New Hampshire have asserted that the applicable limits of liability under each of the New Hampshire Primary Policies were exhausted by New Hampshire's payments toward the Asarco Settlement and by previous payments on other claims.

79.    Upon information and belief, Hecla was insured under other insurance policies other than the New Hampshire Primary Policies, and those insurance policies would have potentially been obligated to contribute toward some portion of the amounts Hecla incurred with respect to the Asarco Settlement.

80.    Hartford is entitled to a declaratory judgment that, to the extent that coverage is not otherwise barred by the terms, conditions, definitions or exclusions in the Hartford Policies, Hartford has no duty to defend or indemnify Hecla with respect to the Underlying Environmental Matters unless and until the applicable limits of liability under the New Hampshire Primary Policies and any other applicable underlying insurance have been properly exhausted.

81.    An actual controversy and dispute exists between and among the parties as to the extent to which, if at all, coverage under any of the Hartford Policies has attached because Hecla has not exhausted all of the applicable underlying insurance, including, but not limited to, the New Hampshire Primary Policies.

**WHEREFORE**, Plaintiffs, Twin City Fire Insurance Company, Nutmeg Insurance Company and Hartford Underwriters Insurance Company, pray for judgment in Hartford's favor and a declaration as follows:

(a)    Declaring whether the applicable limits of the New Hampshire Primary Policies underlying the Hartford Policies are properly exhausted;

COMPLAINT FOR DECLARATORY JUDGMENT - 20

(b)      Declaring that, if coverage is not otherwise barred, Hartford has no duty to
defend or indemnify Hecla with respect to the Underlying Environmental
Matters unless and until the applicable limits of liability under the New
Hampshire Primary Policies and any other applicable underlying
insurance have been properly exhausted; and

(c)      Awarding Hartford such other and further relief as the Court may deem
appropriate and just.

### COUNT V – DECLARATORY JUDGMENT
### Allocation/Apportionment Among All Parties

82.     Hartford hereby realleges and incorporates Paragraphs 1–56 of this Complaint as
if fully set forth herein.

83.     Hartford contends that it has no coverage obligations with respect to the
Underlying Environmental Matters.

84.     In the event that Hartford is found to have any liability with respect to the
Underlying Environmental Matters, damages must be allocated, according to the applicable laws, to
years of no insurance, under insurance, self-insurance, or other insurance.

85.     In the event that Hartford is found to have any liability with respect to the
Underlying Environmental Matters, Hartford is entitled to contribution, subrogation,
reimbursement, setoff, and/or allocation of defense and/or indemnity costs from other parties to this
action, in accordance with the final rulings in this case.

**WHEREFORE**, Plaintiffs, Twin City Fire Insurance Company, Nutmeg Insurance
Company and Hartford Underwriters Insurance Company, pray for judgment in Hartford's favor
and a declaration as follows:

COMPLAINT FOR DECLARATORY JUDGMENT - 21

> (a) Declaring that to the extent that Hartford is found to have any liability with respect to the Underlying Environmental Matters, damages must be allocated, according to the applicable laws, to years of no insurance, under insurance, self-insurance, or other insurance;
>
> (b) Declaring that to the extent that Hartford is found to have any liability with respect to the Underlying Environmental Matters, Hartford is entitled to contribution, subrogation, reimbursement, setoff, and/or allocation of defense and/or indemnity costs from other parties to this action; and
>
> (c) Awarding Hartford such other and further relief as the Court may deem appropriate and just.

<u>**COUNT VI – DECLARATORY JUDGMENT**</u>
<u>**Other Policy Defenses**</u>

86. Hartford hereby realleges and incorporates Paragraphs 1–56 of this Complaint as if fully set forth herein.

87. In the event that coverage is not barred by Counts I – V, coverage is nonetheless alternatively barred by various other defenses.

88. Specifically, Hartford requests that this Court determine and declare that Hartford currently has no, and never had any obligation, under the Hartford Policies or otherwise, to defend or indemnify Hecla, or to pay for or reimburse any defense and/or indemnity costs, in connection with the Underlying Environmental Matters based on one or more of the following grounds:

> (a) Coverage is barred to the extent that Hecla Limited does not qualify as a "Named Insured" or insured under the Hartford Policies;

COMPLAINT FOR DECLARATORY JUDGMENT - 22

(b)      There is no coverage under the Hartford Policies for any injury or damage that does not constitute "property damage" and/or was not caused by an "occurrence" within the meaning of the Hartford Policies;

(c)      There is no coverage under the Hartford Policies for injury or damage that was expected or intended from the standpoint of the insured or that was caused intentionally by or at the direction of an insured;

(d)      There is no coverage under the Hartford Policies for any damages on account of "property damage" which occurred outside the policy period of one or more of the Hartford Policies;

(e)      The Hartford Policies do not provide coverage for conduct which is in violation of law or public policy;

(f)      The Hartford Policies do not provide coverage to the extent that the claims in the Underlying Environmental Matters arose from risks or losses known to the insured prior to the inception dates of one or more of the Hartford Policies;

(g)      The Hartford Policies do not provide coverage to the extent the acts, conditions, events and damages which form the basis of the claims against the insured were not fortuitous;

(h)      The Hartford Policies do not provide coverage for fines, penalties, punitive or exemplary damages, or any criminal or malicious acts or omissions of any insured, acting through its servants, agents or employees;

(i)      The Hartford Policies do not provide coverage for equitable, injunctive or other similar non-monetary relief;

COMPLAINT FOR DECLARATORY JUDGMENT - 23

(j)     The Hartford Policies do not provide coverage for sums incurred as a result of any insured's failure to mitigate any alleged damages;

(k)     There is no coverage under the Hartford Policies to the extent that any insured made any voluntary payment and/or assumed any obligation, incurred any expense or made any payment that it was not legally obligated to pay;

(l)     Coverage is barred to the extent the insured has failed to perform all of its obligations and duties and/or comply with all conditions precedent and subsequent under the Hartford Policies;

(m)     Hartford's liability, if any, is limited to the amount described in the limits of liability provisions of the Hartford Policies and the Hartford Policies only provide coverage up to the stated per "occurrence" and aggregate limits of liability;

(n)     To the extent that any coverage obligations arise under the Hartford Policies, such obligations are subject to any applicable self-insured retentions or deductibles or other premium arrangements and/or the operation of any non-cumulation clauses contained therein; and

(o)     To the extent that any coverage obligations arise under the Hartford Policies, Hartford reserves the right to seek the participation of any party, including any insured, toward any defense and/or indemnity.

89.     An actual and justiciable controversy exists between Hartford and Hecla concerning their respective rights and liabilities under the Hartford Policies.

COMPLAINT FOR DECLARATORY JUDGMENT - 24

**WHEREFORE**, Plaintiffs, Twin City Fire Insurance Company, Nutmeg Insurance Company and Hartford Underwriters Insurance Company, pray for judgment in Hartford's favor and a declaration as follows:

(a)     Declaring that the Hartford Policies do not provide coverage for the Underlying Environmental Matters;

(b)     Declaring that Hartford does not have any obligation, and has never had any obligation, under the Hartford Policies or otherwise, to defend, reimburse defense costs or indemnify Hecla in connection with any claims, liabilities, loss or damages relating to the Underlying Environmental Matters; and

(c)     Awarding Hartford such other and further relief as the Court may deem appropriate and just.

DATED this 13th day of September, 2022.

DUKE EVETT, PLLC

By  /s/Keely E. Duke_____
      Keely E. Duke – Of the Firm

      -and-

      KARBAL, COHEN, ECONOMOU,
      SILK & DUNNE, LLC
      Dena Economou (*pro hac vice* pending)
      Gerald E. Ziebell (*pro hac vice* pending)

      *Attorneys for Plaintiffs,*
      *Twin City Fire Insurance Company, Nutmeg*
      *Insurance Company and Hartford*
      *Underwriters Insurance Company*